Gurmeet Singh **MALHI**, aka **Parpal Singh Malli**; **Davinder Singh,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 02–71609.

United States Court of Appeals,
Ninth Circuit.

Submitted June 12, 2003.*

Filed July 18, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Alison Dixon, Dixon & Coghlan, San Francisco, CA, for Petitioner.

Anh Thu P. Mai, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for Respondent.

Before GRABER, WARDLAW and CLIFTON, Circuit Judges.

## OPINION

CLIFTON, Circuit Judge.

Gurmeet Singh Malhi petitions for review of the Board of Immigration Appeals' ("BIA") order denying his asylum, withholding of deportation, and Convention Against Torture claims. His claims are supported by his testimony concerning a series of arrests and beatings by police in India attributed to his membership in a dissident political organization. The BIA denied relief primarily due to an adverse credibility finding. Malhi also appeals the BIA's denial of his motion to remand for adjustment of status in light of his marriage to a United States citizen. We deny the petition.

## I. BACKGROUND

Malhi is a 36–year–old native and citizen of India, who entered the United States as a visitor on September 5, 1996. His application for asylum filed shortly after his arrival was denied. On December 10, 1996, he was placed in deportation proceedings.[1]

Malhi testified that he suffered from past persecution when he was in India and that he has a fear of future persecution based upon three alleged incidents, in each of which he claimed that he was arrested and beaten by police on account of his membership in the All India Sikh Student Federation ("AISSF"), an organization dedicated to the creation of an independent Sikh state. Malhi testified that he joined the AISSF in April 1988, after he and his family moved back to Punjab from Bihar, where he graduated from university. From 1988 to 1996, he said he lived in Punjab, where he helped manage his father's fertilizer store and acted as the local president of AISSF. It was toward the end of this time in Punjab that the series of alleged police encounters occurred.

Malhi testified that the first incident began on June 3, 1994, when police allegedly came to his home and arrested him on the eve of an AISSF event commemorating the storming of the Golden Temple in June 1984. The police labeled him a militant and held him for 21 days, during which time he was beaten and kicked. His father bribed the police to release him.

The second alleged incident began on December 20, 1994, when, according to Malhi, he was arrested at his father's shop

---

1. The Order to Show Cause initially charged him with entry without inspection, but was later amended to charge him instead with overstaying his nonimmigrant visitor visa.

for failing to withdraw from AISSF. He was held for ten days and beaten, and then sent to Majitha for two months and Jalandhar for four months, where he was held in custody. His father again bribed the police to release him.

The third alleged incident was on November 5, 1995, when, Malhi contended, police arrested Malhi and his cousin at his father's shop. The police hit them both, and when the cousin threatened to report them to newspapers and human rights organizations, the police took them both away and severely beat them. Malhi was hung upside down from the ceiling and beaten all over his body. His cousin was administered electric shocks. After 10 days and another bribe from Malhi's father, they were released. Malhi's cousin disappeared on January 11, 1996, and was found dead a few days later. Malhi is certain the police were responsible.

Shortly thereafter, in February 1996, Malhi's home was allegedly raided, but he was not home at the time. Given this string of events, Malhi testified that he moved back to Bihar and decided to leave for the United States. With the help of an uncle, he obtained a United States visa in a false name, supposedly to attend a niece's wedding, and left India for the United States on September 5, 1996.

On October 24, 2000, an immigration judge ("IJ") denied Malhi's applications for asylum, withholding of deportation, and Convention Against Torture relief, primarily premised on an adverse credibility finding. Simply put, as is often the situation in immigration matters, the proof of Malhi's factual assertions depended upon his own testimony. The IJ found that Malhi's testimony was not credible and thus concluded that the factual assertions upon which Malhi's applications depended had not been proven. Malhi appealed to the BIA, which dismissed his appeal after a de

novo review on May 10, 2002, also premised primarily on an adverse credibility finding. On June 6, 2002, Malhi filed the present petition for review.

In the course of this proceeding, Malhi has twice married United States citizens. On January 3, 1998, he married his first wife, who filed an I 130 visa petition on his behalf on February 26, 1998. The petition was granted, but then revoked on October 17, 2000, because the INS was unaware that he married while in deportation proceedings and he did not request a waiver or appear for an interview. He divorced this first wife on May 17, 2001. Less than six months later, on November 2, 2001, he married another United States citizen, and moved the BIA (where the case was then pending) to remand for adjudication on adjustment of status based on this marriage. The BIA denied this motion in the same decision in which it dismissed the appeal from the IJ's decision.

## II. DISCUSSION

### A. *Asylum, Withholding of Deportation, and Convention Against Torture*

Where, as here, the BIA conducts a de novo review of the IJ's decision, our review is limited to the BIA's decision. *Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir. 2002). We must affirm if the BIA's determination is supported by substantial evidence. *Id.*

■ Although we review credibility findings under the deferential substantial evidence standard, in order to make an adverse credibility finding, "[t]he BIA must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir.2001) (per curiam) (internal quotation marks and citation omitted). The discrepancies must go to

the heart of the asylum claim. *Id.* The BIA's decision met this standard.

 The BIA noted, *inter alia,*[2] geographic discrepancies which went to the heart of Malhi's claim of being persecuted in Punjab for being an AISSF member. Location was critical here because the evidence indicated that Sikhs in Bihar had not been persecuted as they had in Punjab, and it was not clear that Malhi actually lived in Punjab as he claimed. Specifically, the BIA noted that Malhi testified that he was born in Punjab, went to school in Bihar, and then moved back to Punjab in 1988, where he stayed until 1996, before fleeing to Bihar six months before leaving for the United States. However, Malhi's asylum application and other INS documents showed his birthplace as Bihar, not Punjab, and stated that he lived in Amritsar, not Bihar, before leaving India. The BIA also found it implausible that Malhi, a university-educated man who spoke Punjabi, Hindi, Bengali, and English, could not read or write Punjabi if he had in fact lived in Punjab and operated a business there for eight years. These findings were sufficiently "specific, cogent reason[s]" for questioning Malhi's credibility. *Id.*

 Where the BIA provides a specific, cogent reason for questioning a petitioner's credibility, the petitioner must show that the evidence compelled a contrary conclusion in order to overcome the special deference accorded to the BIA's credibility determinations. *See Chebchoub v. INS,* 257 F.3d 1038, 1042 (9th Cir.2001); *De Leon Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997). Malhi has not done so. He presented no evidence of the medical treatment he reportedly received and no records of his cousin's death. Only one of the several affidavits he submitted attested

to Malhi being arrested, that being the one from his father, and at best it only partially corroborated Malhi's version of events. Accordingly, given the lack of corroborating evidence, we cannot say that we are "compelled" to believe Malhi's story. *Chebchoub,* 257 F.3d at 1042.

 With the adverse credibility finding intact, we are left with Malhi's membership in AISSF. On its own, membership in AISSF does not "compel" us to find a well-founded fear of persecution, *INS v. Elias Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), because, according to the State Department report considered by the IJ and BIA, membership in AISSF alone would not pose a nationwide danger. Because substantial evidence supports the lack of a well-founded fear of persecution, Malhi's withholding of deportation claim is necessarily foreclosed. *See Valderrama,* 260 F.3d at 1085. His Convention Against Torture claim also fails because he has not shown that it is "more likely than not" that he will be tortured if returned to India. 8 C.F.R. § 208.16(c)(2).

### B. *Motion to Remand*

 "Decisions by the BIA to deny motions to remand and motions to reopen are reviewed using the abuse of discretion standard." *Konstantinova v. INS,* 195 F.3d 528, 529 (9th Cir.1999). "The BIA abuses its discretion when it fails to offer a reasoned explanation for its decision, distorts or disregards important aspects of the alien's claim." *Id.*

 We reject Malhi's argument that the BIA abused its discretion by denying his motion to remand for adjustment of status based on his marriage to a United States citizen. On a motion to reopen or

---

**2.** There were myriad other inconsistencies noted by the IJ and the BIA, including, but

not limited to, the use of a false name in the asylum application.

remand for adjustment of status premised on a marriage that occurred during deportation proceedings, "the motion [must] present[ ] clear and convincing evidence indicating a strong likelihood that the [petitioner's ] marriage is bona fide." *In re Mario Eduardo Velarde–Pacheco,* 23 I. & N. Dec. 253, 256 (BIA 2002); *see also* 8 C.F.R. § 204.2(a)(1)(iii)(A)-(B) (discussing petitioner's burden to overcome the regulatory presumption of fraud for intra-proceedings marriages). The types of documents that may establish that the prior marriage was not entered into for the purpose of evading the immigration laws include, but are not limited to:

(1) Documentation showing joint ownership of property;

(2) Lease showing joint tenancy of a common residence;

(3) Documentation showing commingling of financial resources;

(4) Birth certificate(s) of child(ren) born to the petitioner and beneficiary;

(5) Affidavits of third parties having knowledge of the bona fides of the marital relationship ... Each affidavit must contain the full name and address, date and place of birth of the person making the affidavit and his or her relationship to the spouses, if any. The affidavit must contain complete information and details explaining how the person acquired his or her knowledge of the marriage. Affidavits should be supported, if possible, by one or more types of documentary evidence listed in this paragraph ...; or

(6) Any other documentation which is *relevant to establish that the marriage was not entered into in order to evade the immigration laws of the United States.*

8 C.F.R. § 204.2(a)(1)(iii)(B)(1)-(6) (emphasis added).

■ Although this is a non-exhaustive list, it is clear that, in order to qualify for the bona fide marriage exemption, an applicant must offer evidence that is probative of the motivation for marriage, not just the bare fact of getting married. To qualify, a marriage must be based on an actual and legitimate relationship rather than a subjective desire to adjust status based on marriage, and the applicant's evidence must reflect this. *Id.; accord Velarde Pacheco,* 23 I. & N. Dec. at 256; *Matter of Phillis,* 15 I. & N. Dec. 385, 386 (BIA 1975).

■ Here, Malhi presented: (1) a divorce decree from his first marriage; (2) four photographs of the second wedding; (3) a marriage certificate; (4) his wife's U.S. birth certificate; and (5) a receipt showing an I 130 filing. None of this evidence demonstrated that the marriage was bona fide and none of it fit into any of the suggested categories (or the catchall residual) under 8 C.F.R. § 204.2(a)(1)(iii)(B). Malhi failed to make out a prima facie case of a bona fide marriage, and we therefore affirm the denial of his motion to remand.[3] *Compare Phillis,* 15 I. & N. Dec. at 386 (petitioner failed to adduce any of the relevant kinds of evidence), *with Velarde,* 23 I. & N. Dec. at 256 (petitioner established a prima facie case by adducing, in addition to evidence showing the bare fact of marriage, a birth certificate for his and his wife's son and

**3.** The BIA overlooked the I 130 filing but, as discussed, this is not the type of evidence that petitioners in Malhi's position must present. Therefore, because this item was not an "im-
portant aspect[ ]"of Malhi's claim, the BIA's oversight was not an abuse of discretion. *Konstantinova v. INS,* 195 F.3d 528, 529 (9th Cir.1999).

evidence showing that he knew his wife for four years).

PETITION DENIED.